**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
Fax No.: (949) 209-0303
E-Mail: rnathan@nathanlawpractice.com

Matthew Righetti, Esq. State Bar No. 121012
John Glugoski, Esq. State Bar No. 191551
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94101
Telephone: (415) 983-0900
Facsimile: (415) 397-9005
Email:      matt@righettilaw.com
Email: jglugoski@righettilaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN HARPER, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs | **JURY TRIAL DEMANDED** |
| MONDELĒZ INTERNATIONAL, INC.; MONDELĒZ GLOBAL LLC; and DOES 1 through 10, Inclusive. | |
| Defendants. | |

Plaintiff, RUBEN HARPER ("Plaintiff") brings this action on behalf of himself and all others similarly situated against MONDELĒZ INTERNATIONAL, INC. and MONDELĒZ GLOBAL LLC ("MONDELĒZ" or "Defendants").  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## INTRODUCTION

1.    Mondelēz International, Inc. and Mondelēz Global LLC ("MONDELĒZ") is an American multinational food and beverage company based in Deerfield, Illinois. MONDELĒZ employs approximately 80,000 individuals worldwide. It consists of the global snack and food brands of Kraft Foods, Inc., which occurred after October 2012.  MONDELĒZ manufactures, distributes, and packages several brands, including, but not limited to Oreo, Cadbury, Chips Ahoy, and Trident. On its website, MONDELĒZ states that "people don't want to have to choose between snacking and eating right" and its products are "made the right way," indicating that it exudes transparency in representations on its labeling and statements it makes on its packaging to its consumers[1].

2.    Oreo's can be found in homes across America and can be found at almost any retail store in America such Safeway, Walmart, Costco, Target, and even gas stations. According to MONDELĒZ website, Oreo's were first made in March 6, 1912, "when two decoratively embossed chocolate-flavored wafers met up with a rich crème filling" and "[t]oday, *Oreo* is the world's top selling cookie.[2]"

3.    MONDELĒZ manufactures, distributes, advertises and sells Oreo products with specific representations "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA." Among these MONDELĒZ Oreo products that are purportedly "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA," include the following:

---

[1] https://www.mondelezinternational.com/about-us/our-purpose-strategy

[2] https://www.mondelezinternational.com/newsroom/our-stories/oreo-little-known-facts

a.  Oreo (original);

b.  Chocolate;

c.  Mint;

d.  Mega stuff;

e.  Birthday cake;

f.  Peanut butter;

g.  Reduced fat;

h.  Hot & spicy cinnamon;

i.  Rocky road trip;

j.  Peppermint bark;

k.  Dark chocolate;

l.  Red velvet;

m. Double stuff;

n.  Thins – mint;

o.  Thins – coconut crème;

p.  Thins – latte;

q.  Thins - pistachio;

r.  And any other MONDELĒZ products that claim that its Oreo products are "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA" (hereinafter collectively referred to as the "Products").

4.      Consistent with Defendants' self-promotion as a leader in snack foods, the front of the packaging of the Products state in prominent, lettering that contains "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA." To reinforce the message that the Products contain 'REAL COCOA.' MONDELĒZ uses imagery and coloring on the front packaging, including the use of smaller font for other words[3],

---

[3] MONDELĒZ uses similar words in smaller font such as "Delicious" to promote the representations re: "REAL COCOA."

1  "MADE WITH" to ensure its consumers know Oreo's are made with "REAL COCOA."

2  This is further supported by the fact that some of Defendants' Products only have the

3  representations "REAL COCOA."  Defendants' representations that the Oreo Products

4  are made with "REAL COCOA" are false, misleading, and deceptive. This labeling

5  deceives consumers into believing that they are eating products with "REAL

6  COCOA," but Defendants' Products do not live up to these claims.

7         5.     Contrary to the labeling, however, it is alleged that each of the Products

8  is not made with 'REAL COCOA,' but instead is processed with alkali.

9         6.      Defendants' representations are false, misleading, unfair, unlawful, and

10  are likely to deceive members of the public, and continues to do so.   Defendants'

11  practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750

12  *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code

13  § 17200 *et seq*. ("UCL"), California's False Advertising Law, and Cal. Bus. & Prof.

14  Code § 17500 *et seq.* ("FAL"). In addition, Defendants' representations also give rise

15  to Plaintiff nationwide class claims for fraud, unjust enrichment and breach of express

16  warranty.

17                              **JURISDICTION AND VENUE**

18         7.     This Court has personal jurisdiction over Defendants.  Defendants

19  purposefully avails itself of the California consumer market and distributes the

20  Products to hundreds of locations within this County and thousands of retail locations

21  throughout California, where the Products are purchased by thousands of consumers

22  every day.

23         8.     This Court has original subject-matter jurisdiction over this proposed

24  class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class

25  Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the

26  federal courts in any class action in which at least one hundred (100) members are in

27  the proposed plaintiff class, any member of the plaintiff class is a citizen of a State

28  different from any defendant, and the matter in controversy exceeds the sum of

$5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

9.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

10.     Plaintiff Ruben Harper is a citizen of California.  Within the last three (3) years, Mr. Harper made several purchases of the Products from various stores in and near San Francisco County and San Joaquin County, California.  Prior to purchasing, Mr. Harper also saw, read and relied on the representation and warranty on the front label that the Products are "ALWAYS MADE WITH REAL COCOA." Mr. Harper understood these representations to mean that the Products contained no preservatives. Mr. Harper purchased the Products at a substantial price premium, and would not have bought the Products had he known that the labeling he relied on was false, misleading, deceptive and unfair.  Mr. Harper would purchase the Products again in the future if Defendants changed the composition of the Products so that they conformed to their labeling and marketing.

11.     Defendant MONDELĒZ INTERNATIONAL, INC. and MONDELĒZ GLOBAL LLC ("MONDELĒZ" or "Defendants") are corporations and limited liability company organized under the laws of Delaware with its headquarters and principal place of business at Deerfield, Illinois.  Defendants produce, market and distribute a variety of brands (including the Oreo Products) across the United States. Defendants knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products are not made with real cocoa.

12.     Does 1 through 10 are fictitious names.  That the true names and capacities, whether individual, corporate, associate or otherwise of each of the

1  Defendants designated herein as a DOE are unknown to Plaintiffs at this time, who

2  therefore, sue said Defendants by fictitious names, and will ask leave of this Court for

3  permission to amend this Complaint to show their names and capacities when the

4  same have been ascertained.  Plaintiffs are informed and believe and thereon allege

5  that each of the Defendants designated as a DOE is legally responsible in some

6  manner for the events and happenings herein referred to, and caused injuries and

7  damages thereby to these Plaintiffs as alleged herein.

8  **FACTUAL ALLEGATIONS**

9      13.    According to MONDELĒZ, it sells the top selling cookie in the world,

10 Oreo cookies.   The front label of the Products states, "ALWAYS MADE WITH REAL

11 COCOA" or "REAL COCOA." According to Merriam-Webster, the "real" is defined

12 as not artificial, fraudulent, or illusory[4].  Defendants' claims of "ALWAYS MADE

13 WITH REAL COCOA" or "REAL COCOA[5]" is intended to differentiate the cocoa in

14 the Products from cocoa that has been processed, such as cocoa powder "processed

15 with alkali."  Examples of Defendants representations on the front label of their

16 packaging set forth below:

17

18 

19

20

21

22

23

24

25

26

27 [4] https://www.merriam-webster.com/dictionary/real

28 [5] There are variations of the "REAL COCOA" representations, some of which are supported by different modifiers before and after the "REAL COCOA" statements.

1
2
3
4
5
6
7
8
9
10
11



12    14.    Cocoa powder is an unsweetened powder produced by grinding the seeds

13 of the fruit of a tropical evergreen tree called the cacao, or cocoa tree[6]. The cacao tree

14 produces fruit, which contains a cocoa pod.  Each cocoa pod contains approximately

15 30-50 beans.  The beans are removed from the pod, fermented, and dried.  The cocoa

16 beans are cracked and the shells are separated from nibs. The nibs are roasted to a rich

17 brown color and ground into chocolate liquid called cocoa liquor.  The liquid solidifies

18 after cooling and cocoa butter is extracted.  The solid blocks that remain are pressed to

19 produce cocoa powder. Natural cocoa powder is astringent, by its bitter taste and has a

20 light brown color.

21    15.    The health benefits associated with cocoa are widely accepted[7]. Natural

22

23 _____

24 [6] https://www.thespruceeats.com/what-is-cocoa-powder-520351

25 [7] Cocoa and dark chocolate increasingly have been associated with cardiovascular health benefits. These include increasing vasodilation (*12*) and coronary arterial output (*13*) as well as decreasing blood pressure (*14, 15*) and platelet

26 aggregation (*16*). These combined effects, along with epidemiological studies that show lowering of blood pressure (*17*) and decreases in mortality due to cardiovascular disease (*17, 18*), suggest that cocoa powder and dark chocolate are

27 associated with heart and circulatory benefits. These benefits are thought to be conferred, in part, by the flavanol antioxidants found in cocoa. Impact of Alkalization on the Antioxidant and Flavanol Content of Commercial Cocoa

28 Powders, Kenneth B. Miller, at al. J. Agric. Food Chem. 2008, 56, 8527–8533 8527 .

cocoa powder's health benefits include a high amount of flavanols and fiber.  Cocoa is a food ingredient that is important for the contribution of flavor to foods and it clearly has associated with health benefits. Flavanol (flavan-3-ol) antioxidants[8] are responsible for cardiovascular health benefits. It is a well-known fact that natural cocoas are high in flavanols. Flavonoids are a class of antioxidants that are abundant in both cacao and cocoa powder. Flavonoids inhibit pro-inflammatory enzymes in the body, meaning that they have a widespread anti-inflammatory effect. Additionally, flavonoids have been associated with higher levels of "healthy" HDL cholesterol and better overall cardiovascular health. In a study, the results showed that natural cocoas tend to group with the highest total flavanols ranging from 22.86 to 40.25 mg/g. The lightly alkali processed cocoa powders ranged from 8.76 to 24.65 mg/g total flavanols, the medium alkali treated powders from 3.93 to 14.00 mg/g, and the heavily alkali treated powders from 1.33 to 6.05 mg/g total flavanols. Natural cocoas showed the highest levels of ORAC and TP. Both antioxidant capacity and TP were highly negatively correlated with pH[9].  Natural (nonalkalized powders) have the highest ORAC, total polyphenols ("TP")[10] and flavanols (including procyanidins). When cocoa is processed with alkali, also known as Dutch processing or Dutching, the flavanols and TP's are substantially reduced.[11]

16.    A study conducted by Label Insight surveyed more than 1,500 consumers to determine what they expect from brands when it comes to product

---

[8] Gu, L.; House, S. S.; Wu, X.; Ou, B.; Prior, R. L. Procyanidin and catechin contents and antioxidant capacity of cocoa and chocolate product. *J. Agric. Food Chem.* 2006, *54*, 4057–4061.

[9] https://life-enhancement.com/pages/effect-of-treating-cocoa-with-alkali-the-dutching-process
[10] Singleton, V.; Rossi J. Colorimetry of total polyphenols with phosphomolybdic-phosphotungstic scoid reagents. *Am. J. Enol. Vitic.* 1965, 16, 144-58.

[11] Gu, L.; Kelm, M.; Hammerstone, J. F.; Beecher, G.; Cunningham, D.; Vannozzi, D.; Prior, R. Fractionation of polymeric procyandins from low-bush blueberry and quantification of procyanidins in selected foods with an optimized normal phase HPLC-MS fluorescence detection method. *J. Agric. Food Chem.* 2002, *50*, 4852–4860; Kolbe, F. X. A study of natural and alkali process cocoa powders *Manuf. Confect.* 1964, May, 31-34.

1  information. The survey results indicate that the vast majority of consumers value

2  product transparency and consider a wide array of information about a particular

3  product before making purchase decisions. Sixty-seven percent (67%) of consumers

4  believe it is the brand or manufacturer responsibility to provide them with complete

5  product information.  Consumers expect brands to provide complete and accurate

6  information about the product. Ninety-four percent (94%) of consumers say that they

7  want manufacturers to be transparent about the actual ingredients in food and how it is

8  made. The study found that consumers lack access to the complete set of information

9  they're looking for in order to make informed purchase decisions when shopping for

10  groceries. Even when the information is provided, they don't fully understand what it

11  means due to inconsistency, information overload and misinformation[12].

12      17.    Defendants' representations "ALWAYS MADE WITH REAL COCOA"

13  and "REAL COCOA" is false, misleading and deceptive to consumers.  Defendants'

14  representations are misleading because the front-label claims[13] the Products contain

15  "REAL COCOA" representing to consumers that the 'cocoa' in the Products are in an

16  unadulterated, non-artificial form. In the United States, food-labeling regulations

17  require that alkalized cocoa powder or liquor must be declared as 'cocoa (liquor)

18  treated with alkali' or 'cocoa processed with alkali.[14]'  The two basic types of cocoa

19  powder are natural process and the Dutch (or alkalized) process, which manufacturers

20

21  _____

22  [12] https://www.labelinsight.com/hubfs/Label_Insight-Food-Revolution-Study.pdf?hsCtaTracking=fc71fa82-7e0b-4b05-b2b4-de1ade992d33%7C95a8befc-d0cc-4b8b-8102-529d937eb427

23  [13] NMI highlighted consumers' attitudes and behaviors toward a wide array of issues related to trends in foods and
24  beverage usage. These insights, gleaned from an annual, nationally representative sample of more than 3,000 adults,
    provided an understanding of the attitudes, motivations and behaviors. The survey revealed that transparency in labeling
25  is equally or more important than the contents themselves. Consumers increasingly monitor their food labels and base
    purchase decisions on them. More than three-quarters of consumers report package labels influence their purchases.
26  https://www.nmisolutions.com/research-reports/health-a-wellness-reports/17th-annual-consumer-report-2016-health-and-wellness-trends-in-america

27  [14] 21 C.F.R. 163.112 (Code of Federal Regulations); Kolbe, F. X. A study of natural and alkali process cocoa powders *Manuf.*
28  *Confect*. 1964, May, 31-34.

label in one of these two formats.  The pH level for pure ground cocoa powder is between 5.3 and 5.8, which is to say that it is acidic and it is edible.  However, the acidity does have an impact by affecting its flavor, the way it interacts with other ingredients and its solubility. The Dutch process is a technique that washes the cocoa beans in an alkaline solution (prior to roasting or grounding), which produces a cocoa powder that is not only darker brown, but less acidic with a pH of between 6.8 and 8.1. Under this process cocoa powder dissolves more easily, which makes it easier to disperse when working with recipes for products such as the Oreo Products.  One problem is that it detracts from the non-artificial cocoa taste providing for a milder flavor.  The treatment of cocoa with alkali has a detrimental impact by reducing flavanols, which is approximately 40% of the natural level of flavanols is retained on average for lightly Dutched powders and an average of about 22% is retained in medium alkali treated powders. Alkali treatment substantially reduces the level of flavanols in cocoa powders, negatively impacts the health benefits, which represents an important processing step during which losses can occur."[15]

18.    Defendants' misrepresentations are further enunciated by the fact, it ensures that consumers focus on the "ALWAYS" and "REAL COCOA," which is contained in larger font than the "MADE WITH" representations.  Additionally, the "ALWAYS MADE WITH REAL COCOA" is contained in a light blue highlighted square that stands out to consumers against the dark blue packaging.  Consumers have certain expectations based on experience when it comes to how "cocoa" is declared on a label, because cocoa is a commonly used and valued product.

19.    No reasonable consumer would expect the cocoa in the Products to have been processed with alkalis, because "real" represents the cocoa powder is included in

---

[15] Miller et al., Impact of alkalization on the antioxidant and the flavanol content of commercial cocoa powders. J Argic Food Chem 56:8527-33 (2008).

1   its most unadulterated, non-artificial form[16].

2        20.     It is false, deceptive and misleading to conspicuously promote "real

3   cocoa" without any reference to the presence and use of alkalis either preceding or

4   following because "real cocoa" without any modifying terms implies the absence of

5   artificial ingredients in the cocoa.

6        21.     By representing that the Products are "ALWAYS MADE WITH REAL

7   COCOA" or "REAL COCOA," Defendants have taken advantage of consumers'

8   preferences for foods with particular labeling or that have not undergone a certain

9   process. Consumers pay more for these foods, such as cocoa, as a result of labeling

10  that provides for perceived benefits.

11       22.     Plaintiff and the Class Members reasonably relied on Defendants' false

12  and/or misleading representations that the Products are "ALWAYS MADE WITH REAL

13  COCOA" or "REAL COCOA".  Plaintiff and Class Members did not know and had

14  no reason to know, that the Products were misbranded, false, and misleading and

15  would not have bought the Products had they known the truth about them.

16  Defendant's representations that the Products are "ALWAYS MADE WITH REAL

17  COCOA" or "REAL COCOA" is material to a reasonable consumer, including

18  Plaintiff and Class Members when deciding to purchase it and in fact was material to

19  the purchase of the Products.

20                          **CLASS ACTION ALLEGATIONS**

21       23.     Plaintiff seeks to represent a class defined as all persons in the United

22  States who purchased the Products during the class period (the "Class").  Excluded

23  from the Class is Defendants, its affiliates, employees, officers and directors, persons

24

25

26  [16] A majority of consumers "say that when it comes to ingredient trends, a back-to-basics mind-set, focused on simple
27  ingredients and fewer artificial or processed foods, is a priority." Neilsen Marketing Research, Reaching for Real
    Ingredients: Avoiding the Artificial, Nielsen, CPG, FMCG & Retail, Sept. 6, 2016
28  https://nielsen.com/us/en/insights/news/2016/reaching-for-real-ingredients-avoiding-the-artificial.html

or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

24.     Plaintiff also seeks to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass"). Excluded from the California Subclass are Defendants, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

25.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.     whether Defendants misrepresented material facts concerning the Products on the label of every product;

b.     whether Defendants' conduct was unfair and/or deceptive;

c.     whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the Class and California Sub-Class;

d.     whether Defendants breached express warranties to Plaintiff and the classes;

e.     whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

26.     Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendants' Products bearing the

"ALWAYS MADE WITH REAL COCOA" and "REAL COCOA" representations and Plaintiff sustained damages from Defendants' wrongful conduct.

27.     Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the classes.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.     The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

30.     The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

### COUNT I
**Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750,** *et seq.*
***(Injunctive Relief Only)***

31.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

32.     Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

33.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

34.     Plaintiff Harper and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

35.     Plaintiff Harper, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

36.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and Defendant's conduct was undertaken in transactions intended to result in, and which did result in, the sale of goods to consumers.

37.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Harper and the other members of the California Subclass that the Products are not adulterated or artificial and made with "REAL COCOA" instead of being processed with alkali.

38.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

39.     On May 17, 2019, Plaintiff Harper mailed a notice letter to Defendants consistent with California Civil Code § 1782(a).  The letter was sent on behalf of Harper and all other persons similarly situated.

40.      Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Harper, on behalf of himself and all other members of the California Subclass, seeks injunctive relief due to Defendants' acts and practices.

## COUNT II

**Violation Of California's Unfair Competition Law ("UCL"),
California Business & Professions Code §§ 17200, *et seq.***

41.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

42.     Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

43.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

44.     Defendant violates statutes enacted in California and in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising.  These statutes include:

a) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, et seq.;

b) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, et        seq.;

c) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, et seq.;

d) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

e) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 -1-101, et seq.;

f) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §40-12-101, et seq.

g) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, et seq.;

h) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, et seq.;

i) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, et seq.;

j) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, et seq.;

k) Georgia Fair Business Practices Act, § 10-1-390 et seq.;

l) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et seq.,

and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1,et seq.;

m) Idaho Consumer Protection Act, Idaho Code § 48-601, et seq.;

n) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, et seq.;

o) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, et seq.;

p) Iowa Consumer Fraud Act, Iowa Code § 714.16, et seq.;

q) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, et seq.;

r) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, et seq.;

s) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401, et seq.;

t) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, et seq., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.;

u) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, et seq.;

v) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w) Michigan Consumer Protection Act, § 445.901, et seq.;

x) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, et seq., and      Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, et seq.;

y) Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, et seq.;

z) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq.;

aa) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, et seq.;

bb) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601,

15

**COMPLAINT**

et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat.                   § 87-301, et seq.;

cc) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, et seq.;

dd) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, et seq.;

ee) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, et seq.;

ff) New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1,et seq.;

gg) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, et seq.;

hh) North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, et seq.;

ii) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §75-1, et seq.;

jj) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. et seq.;

kk) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, et seq.;

ll) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, et seq.;

mm) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §201-1, et seq.;

nn) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, et seq.;

oo) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, et seq.;

pp) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, et seq.;

qq) Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, et seq.;

rr) Texas Stat. Ann. § 17.41, et seq., Texas Deceptive Trade Practices Act;

ss) Utah Unfair Practices Act, Utah Code Ann. § 13-5-1,et seq.;

tt) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451,

   et seq.;

uu) Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196,

    et seq.;

vv) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, et seq.;

ww)West Virginia Consumer Credit and Protection Act, West Virginia Code §

46A-6          -101, et seq.;

xx) Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, et seq.;

45.    Defendant violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, and the above referenced statutes in Paragraph 91, as alleged herein, as well as Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular").

46.    Defendants violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

47.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

48.    Defendants violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA," when, in fact, they are processed with alkali.

49.    Plaintiff Harper and the California Subclass lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products' cocoa were processed with alkali (b) they paid a substantial price premium compared to other food products due

to Defendant's misrepresentations; and (c) the Products do not have the

characteristics, uses, or benefits as promised.

### COUNT III
**Violation Of California's False Advertising Law ("FAL"),**
**California Business & Professions Code §§ 17500, *et seq.***

50.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

51.     Plaintiff Harper brings this claim individually and on behalf of the

members of the proposed California Subclass against Defendants.

52.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et

seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or

disseminated before the public in this state, ... in any advertising device ... or in any

other manner or means whatever, including over the Internet, any statement,

concerning ... personal property or services, professional or otherwise, or performance

or disposition thereof, which is untrue or misleading and which is known, or which by

the exercise of reasonable care should be known, to be untrue or misleading."

53.     Defendants committed acts of false advertising, as defined by §§17500,

*et seq.*, by misrepresenting that the Products are "ALWAYS MADE WITH REAL

COCOA" and "REAL COCOA," when they in fact the cocoa is processed with alkali.

54.     Defendants knew or should have known through the exercise of

reasonable care that their representations about the Products were untrue and

misleading.

55.     Defendants' actions in violation of §§ 17500, *et seq.* were false and

misleading such that the general public is and was likely to be deceived.  Plaintiff

Harper and the California Subclass lost money or property as a result of Defendants'

FAL violations because: (a) they would not have purchased the Products on the same

terms if they knew that the Products cocoa were processed with alkali; (b) they paid a

substantial price premium compared food products due to Defendants'

misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV

### Breach of Express Warranty

56.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.     Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendants.

58.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA," meaning that the cocoa is not artificial or processed with alkali.

59.     Defendants' express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding the Products, became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

60.     The Products do not conform to the express warranty because the cocoa is processed with alkali.

61.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' ingredients; (b) they paid a substantial price premium based on Defendants' express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised because the cocoa is processed with alkali.

## COUNT V

### Unjust Enrichment

62. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

63. Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendants.

64. Plaintiff and Class Members conferred benefits on Defendants by purchasing the Products.

65. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the Products, which caused injuries to Plaintiff and members of the classes because they would not have purchased the Products if the true facts had been known i.e. that the cocoa was processed with alkali.

66. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

## COUNT VI

### Fraud

67. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

68. Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendants.

69. As discussed above, Defendants provided Plaintiff and Class Members with false or misleading material information about the Products by representing that

1   "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA." Defendants made that

2   misrepresentation knowing it was false because the cocoa is processed with alkali.

3       70.     Defendants' misrepresentations, upon which Plaintiff and Class Members

4   reasonably and justifiably relied, were intended to induce and actually induced

5   Plaintiff and Class Members to purchase the Products.

6       71.     Defendants' fraudulent actions harmed Plaintiff and Class Members, who

7   are entitled to damages and other legal and equitable relief as a result.

8                          **PRAYER FOR RELIEF**

9       WHEREFORE, Plaintiff demands judgment on behalf of himself and members

10  of the Class, and California Subclass, as follows:

11

12      A.   For an order certifying the nationwide Class, and California Subclass
             under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff
13           as Class and Subclass representatives; and naming Plaintiff's attorneys as
             Class Counsel representing the Class and Sub-Class Members;
14

15      B.   For an order finding in favor of Plaintiff, the nationwide Class, and the
             California Subclass on all counts asserted herein;
16

17      C.   For an order awarding statutory, compensatory, treble, and punitive
18           damages in amounts to be determined by the Court and/or jury;

19
        D.   For injunctive relief enjoining the illegal acts detailed herein;
20

21      E.   For prejudgment interest on all amounts awarded;
22

23      F.   For an order of restitution and all other forms of equitable monetary
             relief; and
24

25      G.   For an order awarding Plaintiff his reasonable attorneys' fees and
             expenses and costs of suit.
26

27

28

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 20, 2019                    Respectfully submitted,


                                       **NATHAN & ASSOCIATES, APC.**


                                       By:_____ */s/ Reuben D. Nathan*_____
                                              Reuben D. Nathan
                                       **NATHAN & ASSOCIATES, APC**
                                       Reuben D. Nathan (State Bar No. 208436)
                                       2901 W. Coast Highway, Suite 200
                                       Newport Beach, CA 92663
                                       Tel. No.: (949) 270-2798
                                       Fax No.: (949) 209-0303
                                       E-Mail: rnathan@nathanlawpractice.com

                                       Matthew Righetti, Esq. State Bar No. 121012
                                       John Glugoski, Esq. State Bar No. 191551
                                       **RIGHETTI GLUGOSKI, P.C.**
                                       456 Montgomery Street, Suite 1400
                                       San Francisco, CA 94101
                                       Telephone: (415) 983-0900
                                       Facsimile: (415) 397-9005

**COMPLAINT**