Reuben D. Nathan (State Bar No. 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
Fax No.: (949) 209-0303
E-Mail: rnathan@nathanlawpractice.com

Matthew Righetti, Esq. (State Bar No. 121012)
John Glugoski, Esq. (State Bar No. 191551)
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94101
Telephone: (415) 983-0900
Facsimile: (415) 397-9005
Email: matt@righettilaw.com
Email: jglugoski@righettilaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN HARPER, on behalf of himself and all others similarly situated,<br><br><br><br>Plaintiffs,<br><br>vs<br><br><br>MONDELĒZ INTERNATIONAL, INC.; MONDELĒZ GLOBAL LLC; and DOES 1 through 10, Inclusive.<br><br><br>Defendants. | Case No. 4:19-cv-02747<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, RUBEN HARPER ("Plaintiff") brings this action on behalf of himself and all others similarly situated against MONDELĒZ INTERNATIONAL, INC. and MONDELĒZ GLOBAL LLC ("MONDELĒZ" or "Defendants").  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## INTRODUCTION

1.      Mondelēz International, Inc. and Mondelēz Global LLC ("MONDELĒZ") are American multinational food and beverage companies based in Deerfield, Illinois.  MONDELĒZ employs approximately 80,000 individuals worldwide. It consists of the global snack and food brands of Kraft Foods, Inc., which occurred after October 2012.  MONDELĒZ manufactures, distributes, and packages several brands, including, but not limited to Oreo, Cadbury, Chips Ahoy, and Trident. On its website, MONDELĒZ states that "people don't want to have to choose between snacking and eating right" and its products are "made the right way," indicating that it exudes transparency in representations on its labeling and statements it makes on its packaging to its consumers[1].

2.      Oreo cookies can be found in homes across America and can be found at almost any retail store in America such Safeway, Walmart, Costco, Target, and even gas stations. According to MONDELĒZ website, Oreo's were first made in March 6, 1912, "when two decoratively embossed chocolate-flavored wafers met up with a rich crème filling" and "[t]oday, *Oreo* is the world's top selling cookie.[2]"

3.      MONDELĒZ manufactures, distributes, advertises and sells Oreo products with specific representations "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA." Among these MONDELĒZ Oreo cookies that are purportedly contain "REAL COCOA" or are "ALWAYS MADE WITH REAL COCOA," include the following:

---

[1] https://www.mondelezinternational.com/about-us/our-purpose-strategy
[2] https://www.mondelezinternational.com/newsroom/our-stories/oreo-little-known-facts

**FIRST AMENDED CLASS ACTION COMPLAINT**

a.  Oreo (original);

b.  Chocolate;

c.  Mint;

d.  Mega stuff;

e.  Birthday cake;

f.  Peanut butter;

g.  Reduced fat;

h.  Hot & spicy cinnamon;

i.  Rocky road trip;

j.  Peppermint bark;

k.  Dark chocolate;

l.  Red velvet;

m. Double stuff;

n.  Thins – mint;

o.  Thins – coconut crème;

p.  Thins – latte;

q.  Thins - pistachio;

r.  And any other MONDELĒZ Oreo products that claim they are "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA"

(hereinafter individually referred to as "Product" and collectively as the "Products").

4.      Consistent with Defendants' self-promotion as a leader in snack foods, the front of the packaging of the Products state in prominent, lettering that contains "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA." To reinforce the message that the Products contain 'REAL COCOA.' MONDELĒZ uses imagery and coloring on the front packaging, including the use of larger words such as "ALWAYS" and smaller font for other words, such as "MADE WITH," to ensure its consumers are specifically drawn to the representations that Oreo's cookies are made with "REAL COCOA."  This is further supported by the fact that some of Defendants'

Products only have the representations "REAL COCOA."  Defendants'
representations that the Oreo Products are made with "REAL COCOA" are false,
misleading, and deceptive.

5.     The labeling of the Products deceives consumers into believing that they
are eating products made with "REAL COCOA" and not "cocoa processed with
alkali," but Defendants' Products do not live up to these claims.

6.     Contrary to the labeling, however, it is alleged that each of the Products
is not made with 'REAL COCOA,' but instead is processed with alkali.

7.      Defendants' representations are false, misleading, unfair, unlawful, and
are likely to deceive members of the public, and continues to do so.   Defendants'
practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750
*et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code
§ 17200 *et seq*. ("UCL"), California's False Advertising Law, and Cal. Bus. & Prof.
Code § 17500 *et seq.* ("FAL"). In addition, Defendants' representations also give rise
to Plaintiff nationwide class claims for fraud, unjust enrichment and breach of express
warranty.

**JURISDICTION AND VENUE**

8.     This Court has personal jurisdiction over Defendants.  Defendants
purposefully avails itself of the California consumer market and distributes the
Products to hundreds of locations within this County and thousands of retail locations
throughout California, where the Products are purchased by thousands of consumers
every day.

9.     This Court has original subject-matter jurisdiction over this proposed
class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class
Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the
federal courts in any class action in which at least one hundred (100) members are in
the proposed plaintiff class, any member of the plaintiff class is a citizen of a State
different from any defendant, and the matter in controversy exceeds the sum of

**FIRST AMENDED CLASS ACTION COMPLAINT**

$5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

10.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

**PARTIES**

11.     Plaintiff Ruben Harper is a citizen of California.  Within the last three (3) years, Mr. Harper made several purchases of the Products from various stores in and near San Francisco County, Contra Costa County, and San Joaquin County, California.  Prior to purchasing, Mr. Harper also saw, read and relied on the representation and warranty on the front label that the Products are "ALWAYS MADE WITH REAL COCOA," and "REAL COCOA." Mr. Harper understood these representations to mean that the Products contained are not adulterated or artificially[3] processed.  Mr. Harper purchased the Products at a price premium, and would not have bought the Products had he known that the labeling he relied on was false, misleading, deceptive and unfair.  Mr. Harper would purchase the Products again in the future if Defendants changed the composition of the Products so that they conformed to their labeling and marketing.

12.     Defendant MONDELĒZ INTERNATIONAL, INC. is a corporation and MONDELĒZ GLOBAL LLC ("MONDELĒZ" or "Defendants") a limited liability company, both organized under the laws of Delaware with its headquarters and principal place of business located in Deerfield, Illinois.  Defendants produce, market and distribute a variety of brands (including the Oreo Products) across the United

---

[3] Merriam-Webster defines "real" is defined as not artificial.

1   States. Defendants know that the labeling of the Products is false and misleading to a

2   reasonable consumer, because the Products are processed with alkali.

3        13.   Does 1 through 10 are fictitious names.  That the true names and

4   capacities, whether individual, corporate, associate or otherwise of each of the

5   Defendants designated herein as a DOE are unknown to Plaintiffs at this time, who

6   therefore, sue said Defendants by fictitious names, and will ask leave of this Court for

7   permission to amend this Complaint to show their names and capacities when the

8   same have been ascertained.  Plaintiffs are informed and believe and thereon allege

9   that each of the Defendants designated as a DOE is legally responsible in some

10  manner for the events and happenings herein referred to, and caused injuries and

11  damages thereby to these Plaintiffs as alleged herein.

12  **FACTUAL ALLEGATIONS**

13       14.   According to MONDELĒZ, it sells the top selling cookie in the world --

14  Oreo cookies. MONDELĒZ sells Oreo cookies in a variety of packages and flavors

15  and the number of different kinds of Oreo cookies have increased over the past years,

16  including the introduction of special or limited editions of Oreo cookies.

17  The front label of the Products prominently state, "ALWAYS MADE WITH REAL

18  COCOA" or "REAL COCOA." The only other prominent words contained on the

19  front of the packaging other than "OREO," are "ALWAYS MADE WITH REAL

20  COCOA," or "REAL COCOA."  Defendants' claims of "ALWAYS MADE WITH REAL

21  COCOA" or "REAL COCOA" are intended to differentiate the cocoa in the Products

22  from cocoa that has been processed, such as cocoa powder "processed with alkali."

23       15.   Within the last decade in the United States, Defendants have become

24  aware that consumers' desire healthier food choices, including ingredients, has

25  increased dramatically regardless of the type of food at issue.[4] Consumers' preference

26  for healthier foods and ingredients has caused companies to implement advertising

27  _____

28  [4] Marrie RA, Salter A, Tyry T, Fox RJ, Cutter GR. Health literacy association with health behaviors and health care utilization in multiple sclerosis: a cross-sectional study. Interact J Med Res 2014;3(1):e3

**FIRST AMENDED CLASS ACTION COMPLAINT**

schemes directed at enunciating perceived health benefits associated with the products.[5]  On information and belief, companies such as MONDELĒZ are aware of consumer preferences to eat healthier products that have not been adulterated or processed.[6]  Generally, consumers' ability to interpret nutrition label information is poor, so prominent labels -- especially those prominently featured on the front packaging -- are particularly important to consumers.[7] MONDELĒZ has taken advantage of these consumer preferences in advertising the Products to consumers within the United States.

16.     A study conducted by Label Insight surveyed more than 1,500 consumers to determine what they expect from brands when it comes to product information. The survey results indicate that the vast majority of consumers value product transparency and consider a wide array of information about a particular product before making purchase decisions. Sixty-seven percent (67%) of consumers believe it is the brand or manufacturer responsibility to provide them with complete product information. Consumers expect brands to provide complete and accurate information about the product. Ninety-four percent (94%) of consumers say that they want manufacturers to be transparent about the actual ingredients in food and how it is made. The study found that consumers lack access to the complete set of information they're looking for in order to make informed purchase decisions when shopping for groceries. Even when the information is provided, they don't fully understand what it means due to inconsistency, information overload and misinformation[8].

---

[5] Berning JP, Chouinard HH, Manning KC, McCluskey JJ, Sprott DE. Identifying consumer preferences for nutrition information on grocery store shelf labels. Food Policy 2010;35(5):429–36.

[6] Sinclair S, Hammond D, Goodman S. Sociodemographic differences in the comprehension of nutritional labels on food products. J Nutr Educ Behav 2013;45(6):767–72.

[7] Lisa M. Soederberg Miller; Diana L. Cassady, The Effects of Nutrition Knowledge of Food Label Use: A Review of the Literature. 2015 Sep.; 92:207-216.; and Marietta AB, Welshimer KJ, Anderson SL. Knowledge, attitudes, and behaviors of college students regarding the 1990 Nutrition Labeling Education Act food labels. J Am Diet Assoc 1999;99(4):445–9.

[8] https://www.labelinsight.com/hubfs/Label_Insight-Food-Revolution-Study.pdf?hsCtaTracking=fc71fa82-7e0b-4b05-b2b4-de1ade992d33%7C95a8befc-d0cc-4b8b-8102-529d937eb427

**FIRST AMENDED CLASS ACTION COMPLAINT**

17.    An example of Defendants representations, "ALWAYS MADE WITH REAL COCOA" prominently located on the front label of (most common – Milk's Favorite Cookie) Oreo cookie packaging as set forth below:



18.    An example of Defendants' representations, "REAL COCOA" is prominently located on the front label of Dark Chocolate Oreo cookie packaging as set forth below:



19.    The word "cocoa" is actually derived from the Spanish word "cacao," which is derived from the Nahuatl word cacahuatl.[9]  The cocoa bean, which is also

_____

[9] Bingham, Ann; Roberts, Jeremy (2010). *South and Meso-American Mythology A to Z*. Infobase Publishing. p. 19. ISBN 978-1-4381-2958-7.

**FIRST AMENDED CLASS ACTION COMPLAINT**

called the cacao bean or cacao is the dried and fully fermented seed of *Theobroma cacao*, from which cocoa solids[10] (a mixture of nonfat substances) and cocoa butter (the fat) are usually extracted. Cocoa beans form the basis of cocoa powder and chocolate.

20.     'Cocoa powder' is an unsweetened powder produced by grinding the seeds of the fruit of a tropical evergreen tree called the cacao, or cocoa tree.[11] The types of cocoa powders that are produced are based on the amount of cocoa butter or fat remaining in the powder: high or breakfast cocoa (22%+), medium or cocoa (10-12%) and low-fat cocoa (less than 10%).[12]  (The cacao tree produces fruit, which contains a cocoa pod.  Each cocoa pod contains approximately 30-50 beans.  The beans are removed from the pod, fermented, and dried.  The cocoa beans are cracked and the shells are separated from nibs. The nibs are roasted to a rich brown color and ground into chocolate liquid called cocoa liquor.  The liquid solidifies after cooling and cocoa butter is extracted.  The solid blocks that remain are pressed to produce cocoa powder. Natural cocoa powder is astringent, by its bitter taste and has a light brown color, which can seen below:



---

[10] Taylor CL, Wilkening VL. How the nutrition food label was developed, part 1: the Nutrition Facts panel. J Am Diet Assoc 2008;108(3):437–42

[11] https://www.thespruceeats.com/what-is-cocoa-powder-520351

[12] 21 CFR 163:112-114 (breakfast cocoa, cocoa, and low fat cocoa)

**FIRST AMENDED CLASS ACTION COMPLAINT**

21. The health benefits associated with cocoa are widely accepted[13]. It is generally known that cocoa powder's health benefits include a high amount of flavanols and fiber. Cocoa is a food ingredient that is important for the contribution of flavor to foods and it clearly has associated with health benefits. Flavanol (flavan-3-ol) antioxidants[14] are responsible for cardiovascular health benefits. It is a well-known fact that natural cocoas are high in flavanols. Flavonoids are a class of antioxidants that are abundant in both cacao and cocoa powder. Flavonoids inhibit pro-inflammatory enzymes in the body, meaning that they have a widespread anti-inflammatory effect. Additionally, flavonoids have been associated with higher levels of "healthy" HDL cholesterol and better overall cardiovascular health. In a study, the results showed that natural cocoas tend to group with the highest total flavanols ranging from 22.86 to 40.25 mg/g. The lightly alkali processed cocoa powders ranged from 8.76 to 24.65 mg/g total flavanols, the medium alkali treated powders from 3.93 to 14.00 mg/g, and the heavily alkali treated powders from 1.33 to 6.05 mg/g total flavanols. Natural cocoas showed the highest levels of ORAC and TP. Both antioxidant capacity and TP were highly negatively correlated with pH[15]. Natural (nonalkalized powders) have the highest ORAC, total polyphenols ("TP")[16] and

---

[13] Cocoa and dark chocolate increasingly have been associated with cardiovascular health benefits. These include increasing vasodilation (*12*) and coronary arterial output (*13*) as well as decreasing blood pressure (*14, 15*) and platelet aggregation (*16*). These combined effects, along with epidemiological studies that show lowering of blood pressure (*17*) and decreases in mortality due to cardiovascular disease (*17, 18*), suggest that cocoa powder and dark chocolate are associated with heart and circulatory benefits. These benefits are thought to be conferred, in part, by the flavanol antioxidants found in cocoa. Impact of Alkalization on the Antioxidant and Flavanol Content of Commercial Cocoa Powders, Kenneth B. Miller, at al. J. Agric. Food Chem. 2008, 56, 8527–8533 8527 .

[14] Gu, L.; House, S. S.; Wu, X.; Ou, B.; Prior, R. L. Procyanidin and catechin contents and antioxidant capacity of cocoa and chocolate product. *J. Agric. Food Chem.* 2006, *54*, 4057–4061.

[15] https://life-enhancement.com/pages/effect-of-treating-cocoa-with-alkali-the-dutching-process
[16] Singleton, V.; Rossi J. Colorimetry of total polyphenols with phosphomolybdic-phosphotungstic scoid reagents. *Am. J. Enol. Vitic.* 1965, 16, 144-58.

**FIRST AMENDED CLASS ACTION COMPLAINT**

flavanols (including procyanidins). When cocoa is processed with alkali, also known as Dutch processing or Dutching, the flavanols and TP's are substantially reduced.[17]

22.    In addition to its antioxidant properties attributed from flavanols, there are additional scientifically proven health benefits associated with unprocessed cocoa that is directly derived from the seed of the cocoa tree. Studies show that cocoa and dark chocolate will improve your health by lowering your risk of heart disease. Cocoa and dark chocolate is also nutritious, because the fatty acid profile of the cocoa is excellent and it contains stimulants such as caffeine. These cocoa beans can also improve your blood flow and blood pressure, while raising HDL and protecting LDL from oxidation.  Unprocessed cocoa also contains bioactive compounds to protect against sun damage.[18]

23.    In the United States, food-labeling regulations require that alkalized cocoa powder or liquor must be declared as 'cocoa (liquor) treated with alkali' or 'cocoa processed with alkali.[19]'  The two basic types of cocoa powder are natural process and the Dutch (or alkalized) process, which manufacturers label in one of these two formats.  The pH level for pure ground cocoa powder is between 5.3 and 5.8, which is to say that it is acidic and it is edible.  However, the acidity does have an impact by affecting its flavor, the way it interacts with other ingredients and its solubility. The Dutch process is a technique that washes the cocoa beans in an alkaline solution (prior to roasting or grounding), which produces a cocoa powder that is not only darker brown, but less acidic with a pH of between 6.8 and 8.1.  Under this process cocoa

---

[17] Gu, L.; Kelm, M.; Hammerstone, J. F.; Beecher, G.; Cunningham, D.; Vannozzi, D.; Prior, R. Fractionation of polymeric procyanidins from low-bush blueberry and quantification of procyandins in selected foods with an optimized normal phase HPLC-MS fluorescence detection method. *J. Agric. Food Chem*. 2002, *50*, 4852–4860; Kolbe, F. X. A study of natural and alkali process cocoa powders *Manuf. Confect*. 1964, May, 31-34.

[18] https://www.healthline.com/nutrition/7-health-benefits-dark-chocolate#section7

[19] 21 C.F.R. 163.112 (Code of Federal Regulations); Kolbe, F. X. A study of natural and alkali process cocoa powders *Manuf. Confect*. 1964, May, 31-34.

**FIRST AMENDED CLASS ACTION COMPLAINT**

powder dissolves more easily, which makes it easier to disperse when working with recipes for products such as the Oreo Products.  One problem is that it detracts from the non-artificial cocoa taste providing for a milder flavor.  The treatment of cocoa with alkali reduces flavanols. Approximately, 40% of the natural level of flavanols is retained on average for lightly Dutched powders and an average of about 22% is retained in medium alkali treated powders. Alkali treatment substantially reduces the level of flavanols in cocoa powders, negatively impacts the health benefits, which represents an important processing step during which losses can occur."[20]

24.     There are labels of designation based on standards of identity for cocoa. The requirements for "[l]abel designations of ingredients for standardized foods" are specifically set forth by the FDA in 21 CFR 130.11.  The CFR states that the 'standards of identity' of foods require that the optional ingredients such as "spices, flavorings, colorings, emulsifiers, flavor enhancers, stabilizers, preservatives, and sweeteners" be declared in a specified manner on the label wherever the name of the standardized food appears on the label so conspicuously as to be easily seen under customary conditions of purchase.

25.     The "[r]equirements for Specific Standardized Cacao Products" is specifically set forth by the FDA in 21 CFR 163.110. The optional ingredients for cacao products are set forth under section (b) of 21 CFR 163.110, which identifies "alkali ingredients" as one of the optional standardized ingredients.  MONDELĒZ states on the nutrition panel that the Products containing cocoa are cocoa "processed with alkalis", which is located in a non-prominent location on the back of the packaging.  An example of the back packaging of the (most common) Oreo cookie states that the cocoa is "processed with alkalis," which is set forth in the picture below:

---

[20] Miller et al., Impact of alkalization on the antioxidant and the flavanol content of commercial cocoa powders. J Argic Food Chem 56:8527-33 (2008).

## Nutrition Facts

Serving Size 1 pack (57g)
Servings Per Container 12

**Amount Per Serving**

**Calories** 270   Calories from Fat 100

| | % Daily Value* |
|---|---|
| **Total Fat** 11g | **17%** |
| Saturated Fat 3g | **15%** |
| Trans Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 220mg | **9%** |
| **Potassium** 95mg | **3%** |
| **Total Carbohydrate** 41g | **14%** |
| Dietary Fiber 1g | **4%** |
| Sugars 23g | |
| **Protein** 2g | |

| Vitamin A 0% | • | Vitamin C 0% |
|---|---|---|
| Calcium 2% | • | Iron 15% |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | | Calories: | 2,000 | 2,500 |
|---|---|---|---|---|
| Total Fat | Less than | | 65g | 80g |
| Sat Fat | Less than | | 20g | 25g |
| Cholesterol | Less than | | 300mg | 300mg |
| Sodium | Less than | | 2,400mg | 2,400mg |
| Potassium | | | 3,500mg | 3,500mg |
| Total Carbohydrate | | | 300g | 375g |
| Dietary Fiber | | | 25g | 30g |

INGREDIENTS: UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE (VITAMIN B1), RIBOFLAVIN (VITAMIN B2), FOLIC ACID), SUGAR, PALM AND/OR CANOLA OIL, COCOA (PROCESSED WITH ALKALI), HIGH FRUCTOSE CORN SYRUP, LEAVENING (BAKING SODA AND/OR CALCIUM PHOSPHATE), CORNSTARCH, SALT, SOY LECITHIN, VANILLIN – AN ARTIFICIAL FLAVOR, CHOCOLATE.

CONTAINS: WHEAT, SOY.

MONDELEZ GLOBAL LLC
EAST HANOVER, NJ 07936 USA

26.    21 CFR 163.110(c)(1) states: [w]hen cacao nibs, or the cacao beans from which they are prepared, are processed with alkali ingredients specified in paragraph (b)(1) of this section, the name of the food shall be accompanied by the statement "Processed with alkali" or "Processed with ____", the blank being filled in with the common or usual name of the specific alkali ingredient used in the food."

27.    Pursuant to 21 CFR 163.110(c) "[w]henever the name of the food appears on the label so conspicuously as to be easily seen under the customary conditions of purchase, the statements prescribed in the paragraphs (c)(1) and (c)(2) of this section shall precede or follow the name without intervening printed or graphic matter.

28.    21 CFR 163.113 provides: "(a) Description. Cocoa is the food that conforms to the definition and standard of identity, and is subject to the requirements for label declaration of ingredients for breakfast cocoa in §163.112, except that the

**FIRST AMENDED CLASS ACTION COMPLAINT**

cacao fat content is less than 22 percent, but not less than 10 percent by weight, as determined by the method prescribed in §163.5(b)." Whereas, 21 CFR 163.113 states: "(b) Nomenclature. The name of the food is "cocoa" or "medium fat cocoa".

29.     The Code of Federal Regulations specifically draws a distinction between the types of standards of identity relating to cocoa – specifically, "cocoa," "cocoa processed with alkali," and "neutralizing agents."  Consumers preferences and importance of distinction between "cocoa," "cocoa processed with alkali," other standards of identity designations, or those designations which are otherwise unknown is further supported by the FDA's requirements to disclose the standards of identity of cocoa.

30.     The term, "real cocoa," is what defendants conspicuously and prominently represent on the front label, which leads a reasonable consumer to believe that the cocoa has not been adulterated, processed with alkali, or modified from its real nature/status. The claim "ALWAYS MADE WITH REAL COCOA," or "REAL COCOA" is intended to differentiate the cocoa in the Products from other cocoa designations with the standard designations such as "cocoa" or cocoa processed with alkalis."

31.     The reasonable consumer is led to believe that the Products do not contain alkalis and nutritional benefits associated with "real cocoa" have been unaltered in any way, including in the processing, since it is represented as "real." The CFRs require "processed with real cocoa" be conspicuously disclosed, because there is a significant difference between cocoa and cocoa processed with alkali. MONDELĒZ is aware consumers prefer to purchase products that are marketed to appear as a healthier option -- which includes "real cocoa" rather than processed cocoa and particularly cocoa processed with alkali. MONDELĒZ intentionally makes misrepresentations as to "real cocoa" ingredient used in the finished product by conspicuously using large prominent lettering with the words "ALWAYS MADE WITH

REAL COCOA," or "REAL COCOA" while deliberately hiding the fact that there is a processing method used that alters the nature of the cocoa product – making it anything but "real."

32.   Defendants' representations "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA" are false, misleading and deceptive to consumers because consumers expect "real cocoa" to be a quality of cocoa that is not processed with alkali.  Defendants' representations are misleading because the front-label claims[21] the Products contain "REAL COCOA" representing to consumers that the 'cocoa' in the Products are in an unadulterated, non-artificial form. Reasonable consumers are not expected to "double-check" the inconsistencies between Defendants' representations on front label with less prominent representations set forth on the back of the packaging.

33.   Defendants' misrepresentations are further enunciated by the fact, it ensures that consumers focus on the "ALWAYS" and "REAL COCOA," which is contained in larger font than the "MADE WITH" representations.  Additionally, the "ALWAYS MADE WITH REAL COCOA" is contained in a light blue highlighted square that stands out to consumers against the dark blue packaging.  Consumers have certain expectations based on experience when it comes to how "cocoa" is declared on a label, because cocoa is a commonly used and valued product.

34.   No reasonable consumer would expect the cocoa in the Products to have been processed with alkalis, because "real" represents the cocoa powder is included in its most unadulterated, non-artificial form[22].

---

[21] NMI highlighted consumers' attitudes and behaviors toward a wide array of issues related to trends in foods and beverage usage. These insights, gleaned from an annual, nationally representative sample of more than 3,000 adults, provided an understanding of the attitudes, motivations and behaviors. The survey revealed that transparency in labeling is equally or more important than the contents themselves. Consumers increasingly monitor their food labels and base purchase decisions on them. More than three-quarters of consumers report package labels influence their purchases. https://www.nmisolutions.com/research-reports/health-a-wellness-reports/17th-annual-consumer-report-2016-health-and-wellness-trends-in-america.

[22] A majority of consumers "say that when it comes to ingredient trends, a back-to-basics mind-set, focused on simple ingredients and fewer artificial or processed foods, is a priority." Neilsen Marketing Research, Reaching for Real

35.     It is false, deceptive and misleading to conspicuously promote "real cocoa" without any reference to the presence and use of alkalis either preceding or following because "real cocoa" without any modifying terms implies the absence of processed or artificial ingredients in the cocoa.

36.     By representing that the Products are "ALWAYS MADE WITH REAL COCOA" or "REAL COCOA," Defendants have taken advantage of consumers' preferences for foods with particular labeling or that have not undergone a certain process. Consumers pay more for these foods, such as cocoa, as a result of labeling that provides for perceived benefits.

37.     Plaintiff and the Class Members reasonably relied on Defendants' false and/or misleading representations that the Products are "ALWAYS MADE WITH REAL COCOA" or "REAL COCOA".  Plaintiff and Class Members did not know and had no reason to know, that the Products were misbranded, false, and misleading and would not have bought the Products had they known the truth about them. Defendant's representations that the Products are "ALWAYS MADE WITH REAL COCOA" or "REAL COCOA" is material to a reasonable consumer, including Plaintiff and Class Members when deciding to purchase it and in fact was material to the purchase of the Products.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class").  Excluded from the Class is Defendants, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

---

Ingredients: Avoiding the Artificial, Nielsen, CPG, FMCG & Retail, Sept. 6, 2016
https://nielsen.com/us/en/insights/news/2016/reaching-for-real-ingredients-avoiding-the-artificial.html

**FIRST AMENDED CLASS ACTION COMPLAINT**

39.     Plaintiff also seeks to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass"). Excluded from the California Subclass are Defendants, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

40.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

       a.     whether Defendants misrepresented material facts concerning the Products on the label of every product;

       b.     whether Defendants' conduct was unfair and/or deceptive;

       c.     whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the Class and California Sub-Class;

       d.     whether Defendants breached express warranties to Plaintiff and the classes;

       e.     whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

41.     Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendants' Products bearing the "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA" representations and Plaintiff sustained damages from Defendants' wrongful conduct.

42.     Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the classes.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

44.     The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

45.     The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

**COUNT I**
**Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq.***
***(Damages and Injunctive Relief Only)***

46.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47.     Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

48.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

49.     Plaintiff Harper and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

50.     Plaintiff Harper, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

51.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and Defendant's conduct was undertaken in transactions intended to result in, and which did result in, the sale of goods to consumers.

52.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Harper and the other members of the California Subclass that the Products are not adulterated, artificial, or processed with alkali.

53.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

54.     On May 17, 2019, Plaintiff Harper mailed a notice letter to Defendants consistent with California Civil Code § 1782(a).  The letter was sent on behalf of Harper and all other persons similarly situated.  Defendants failed to respond to Plaintiff Harper's notice letter.

55.      Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Harper, on behalf of himself and all other members of the California Subclass, seeks damages and injunctive relief due to Defendants' acts and practices.

## COUNT II

### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

56.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.     Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

**FIRST AMENDED CLASS ACTION COMPLAINT**

58.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

59.     Defendant violates statutes enacted in California and in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising.  These statutes include:

a) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, et seq.;

b) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, et         seq.;

c) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, et seq.;

d) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

e) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 -1-101, et seq.;

f) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §40-12-101, et seq.

g) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, et seq.;

h) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, et seq.;

i) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, et seq.;

j) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, et seq.;

k) Georgia Fair Business Practices Act, § 10-1-390 et seq.;

l) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et seq.,

   and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1,et seq.;

m) Idaho Consumer Protection Act, Idaho Code § 48-601, et seq.;

n) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §
505/1, et seq.;

o) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, et
seq.;

p) Iowa Consumer Fraud Act, Iowa Code § 714.16, et seq.;

q) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, et seq.;

r) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.,
and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020,
et seq.;

s) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev.
Stat. Ann. §51:1401, et seq.;

t) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, et seq., and
Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, §
1211, et seq.;

u) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, et seq.;

v) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch.
93A;

w) Michigan Consumer Protection Act, § 445.901, et seq.;

x) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, et seq.,
and      Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §
325D.43,
et seq.;

y) Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, et seq.;

z) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq.;

aa) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code
§ 30-14-101, et seq.;

bb) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601,

1

2

et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat.§ 87-301, et seq.;

3

4

cc) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, et seq.;

5

6

dd) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, et seq.;

7

8

ee) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, et seq.;

9

ff) New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1,et seq.;

10

11

gg) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, et seq.;

12

hh) North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, et seq.;

13

14

ii) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §75-1, et seq.;

15

16

jj) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. et seq.;

17

18

kk) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, et seq.;

ll)   Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, et seq.;

19

20

mm) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §201-1, et seq.;

21

22

nn) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, et seq.;

23

24

oo) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10,   et seq.;

25

26

pp) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, et seq.;

27

28

qq) Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, et seq.;

21

rr) Texas Stat. Ann. § 17.41, et seq., Texas Deceptive Trade Practices Act;

ss) Utah Unfair Practices Act, Utah Code Ann. § 13-5-1,et seq.;

tt) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, et seq.;

uu) Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196,
    et seq.;

vv) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, et seq.;

ww)West Virginia Consumer Credit and Protection Act, West Virginia Code §
    46A-6-101, et seq.;

xx) Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, et seq.;

60.    Defendant violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, and the above referenced statutes as alleged herein, as well as Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular").

61.    Defendants violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

62.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

63.    Defendants violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA," when, in fact, they are processed with alkali.

64.    Plaintiff Harper and the California Subclass lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products' cocoa were processed with alkali (b) they paid a price premium compared to other food products due to

Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT III
### Violation Of California's False Advertising Law ("FAL"),
### California Business & Professions Code §§ 17500, *et seq.*

65.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66.    Plaintiff Harper brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

67.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

68.    Defendants committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products are "ALWAYS MADE WITH REAL COCOA" and "REAL COCOA," when they in fact the cocoa is processed with alkali.

69.    Defendants knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

70.    Defendants' actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiff Harper and the California Subclass lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products cocoa were processed with alkali; (b) they paid a

price premium compared food products due to Defendants' misrepresentations; and
(c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV

### Breach of Express Warranty

71.    Plaintiff hereby incorporates by reference the allegations contained in all
preceding paragraphs of this complaint.

72.    Plaintiff brings this claim individually and on behalf of the proposed
Class, and California Subclass against Defendants.

73.    Defendants, as the designer, manufacturer, marketer, distributor, and/or
seller, expressly warranted that the Products "ALWAYS MADE WITH REAL COCOA"
and "REAL COCOA," meaning that the cocoa is not adulterated, artificial or
processed with alkali.

74.    Defendants' express warranties, and its affirmations of fact and promises
made to Plaintiff and the Class regarding the Products, became part of the basis of the
bargain between Defendants and Plaintiff and the Class, thereby creating an express
warranty that the Products would conform to those affirmations of fact,
representations, promises, and descriptions.

75.    The Products do not conform to the express warranty because the cocoa
is processed with alkali.

76.    As a direct and proximate cause of Defendants' breach of express
warranty, Plaintiff and Class Members have been injured and harmed because: (a)
they would not have purchased the Products on the same terms if they knew the truth
about the Products' ingredients; (b) they paid a substantial price premium based on
Defendants' express warranties; and (c) the Products do not have the characteristics,
uses, or benefits as promised because the cocoa is processed with alkali.

## COUNT V

### Unjust Enrichment

77.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendants.

79.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the Products.

80.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the Products, which caused injuries to Plaintiff and members of the classes because they would not have purchased the Products if the true facts had been known i.e. cocoa is processed with alkali.

81.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

## COUNT VI

### Fraud

82.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

83.     Plaintiff brings this claim individually and on behalf of the proposed Class, and California Subclass against Defendants.

84.     As discussed above, Defendants provided Plaintiff and Class Members with false or misleading material information about the Products by representing that

**FIRST AMENDED CLASS ACTION COMPLAINT**

"ALWAYS MADE WITH REAL COCOA" and "REAL COCOA." Defendants made that misrepresentation knowing it was false because the cocoa is processed with alkali.

85.    Defendants' misrepresentations, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase the Products based on Defendants' representations.

86.    Defendants' fraudulent actions harmed Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and members of the Class, and California Subclass, as follows:

A.    For an order certifying the nationwide Class, and California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and Subclass representatives; and naming Plaintiff's attorneys as Class Counsel representing the Class and Sub-Class Members;

B.    For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

C.    For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.    For injunctive relief enjoining the illegal acts detailed herein;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief; and

G.    For an order awarding Plaintiff his reasonable attorneys' fees and expenses and costs of suit.

**FIRST AMENDED CLASS ACTION COMPLAINT**

1

2                          **<u>JURY TRIAL DEMANDED</u>**

3

4              Plaintiff demands a trial by jury on all claims so triable.

5    Dated: June 27, 2019                    Respectfully submitted,

6

7                                            **NATHAN & ASSOCIATES, APC.**

8

9                                            By:_____*/s/ Reuben D. Nathan*_____

10                                                  Reuben D. Nathan
                                             **NATHAN & ASSOCIATES, APC**
11                                           Reuben D. Nathan (State Bar No. 208436)
                                             2901 W. Coast Highway, Suite 200
12                                           Newport Beach, CA 92663
                                             Tel. No.: (949) 270-2798
13                                           Fax No.: (949) 209-0303
                                             E-Mail: rnathan@nathanlawpractice.com
14

15

16
     Dated: June 27, 2019                    Respectfully submitted,
17

18
                                             **RIGHETTI GLUGOSKI, PC.**
19

20                                           By:_____*/s/ Matthew Righetti*_____

21                                                  Matthew Righetti
                                             **RIGHETTI GLUGOSKI, P.C.**
22                                           Matthew Righetti, Esq. State Bar No. 121012
23                                           John Glugoski, Esq. State Bar No. 191551
                                             456 Montgomery Street, Suite 1400
24                                           San Francisco, CA 94101
                                             Telephone: (415) 983-0900
25                                           Facsimile: (415) 397-9005

26

27

28

                                        27